UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


SOUTHWYND, LLC
MAJESTIC DEVELOPMENT COMPANY, LLC                                    PLAINTIFFS


v.                                                    CIVIL ACTION NO. 3:13CV-00952-S


PBI BANK, INC.
PORTER BANCORP, INC.
MARK DELCOTTO                                                         DEFENDANTS


**MEMORANDUM OPINION**

This matter is before the Court on motion of defendant Porter Bancorp, Inc. ("Porter") to dismiss the complaint as to it pursuant to Fed.R.Civ.P. 12(b)(6). (Docket No. 5). Plaintiffs Southwynd, LLC and Majestic Development Company, LLC (collectively "Plaintiffs") have responded. (Docket No. 11). Porter has replied. (Docket No. 18). This matter is now ripe for adjudication. For the reasons that follow, Porter's Motion will be granted.

**Factual Background**

This Motion concerns Porter, a holding corporation, and its wholly owned subsidiary, PBI Bank, Inc. ("PBI Bank"). In their Complaint, Southwynd and Majestic allege that the named defendants required potential borrowers to purchase certain properties as a condition of receiving financing from "PBI," the term that Plaintiffs use collectively for both PBI Bank and Porter. (Docket No. 1-1 at 2). According to Plaintiffs, PBI had taken these properties back through foreclosure, or deeds in lieu of foreclosure, from distressed and defaulting borrowers. (Docket No. 1 at 3-4). They now allege that PBI required them to purchase sixteen distressed lots at an inflated price, then refused to provide financing for

the lots' development. (Docket No. 1 at 4.) In this lawsuit, they allege breach of contract; breach of the duty of good faith and fair dealing; negligence; violation of 12 U.S.C. § 1972; and punitive damages.

Porter's Motion to Dismiss hinges upon the fact that Porter maintains a distinct legal existence from PBI Bank, its subsidiary. Therefore, it argues, Porter has no liability for PBI Bank's alleged wrongs. Porter further contends that the Complaint itself details the activities of Delcotto and PBI Bank, but fails to point to any wrongdoing by Porter itself. (Docket No. 5-1 at 1.)

### **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). The motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *DirecTV, Inc.*, 487 F.3d 471 at 476 (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).

Although a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility: "facts that are merely consistent with a defendant's liability stop short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## Analysis

The Court will address each count of Plaintiffs' Complaint in turn, beginning with breach of contract and the covenant of good faith and fair dealing. (Count I). As to this count, Plaintiffs' Complaint stops short of alleging factual content for which Porter could bear responsibility. To recover for breach of contract under Kentucky law, a plaintiff must "show the existence and the breach of a contractually imposed duty." *Lenning v. Comm. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931). The elements of a breach of contract are: (1) the existence of a valid contract; (2) the breach of the contract; and (3) damages or loss to plaintiff. *Id.* Plaintiffs have not alleged that they entered into a contractual relationship with Porter. Absent the existence of a valid contract, the Court will grant Porter's motion to dismiss. Similarly, the Court will also dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing, as no contract existed between Plaintiffs and Porter upon which to impose this implied covenant. *See Farmers Bank & Trust Co. of Georgetown, Ky. V. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005); *McMullin v. McMullin*, 338 S.W.3d 315, 323 (Ky. Ct. App. 2011).

As for the negligence claim (Count II), the Court notes that parent companies are generally not liable for the actions of their subsidiaries. "A basic tenant of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." *Id.* However,

> [A] fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, [is] that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf.

*U.S. v. Bestfoods*, 524 U.S. 51, 61-62 (1998). "The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007).

Plaintiffs attempt no such showing here, though, nor do they contest the fact that Porter did not originate or service the loans at issue. Instead, Plaintiffs argue that Porter may nonetheless be held liable, despite its status as a separate legal entity, because it either knew or should have known that its subsidiary was engaged in illegal tying arrangements. (Docket No. 11 at 1.) Plaintiffs make no suggestion of a close financial connection or degree of direction and management. The facts raise no inference that Porter exercised such persuasive control as to render PBI Bank a mere instrumentality. Therefore, there is no basis upon which to pierce the corporate veil and attribute PBI Bank's alleged negligence to Porter.

Plaintiffs' third claim arises under the anti-tying provisions of the Bank Holding Company Act ("BCHA"), 12 U.S.C. § 1972. The BCHA prohibits a bank from conditioning its services upon a requirement that the customer "obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service" or "that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service . . . ." 12 U.S.C. § 1972(1). To recover under the BCHA's anti-tying provisions, a plaintiff must prove three elements: "(1) an anticompetitive tying arrangement; (2) the

banking practice at issue was unusual in the banking industry; and (3) the practice must benefit the bank." *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 278 (6th Cir. 1991). The parties' briefs are sparse as to this contention, with neither analyzing whether the statute properly applies to Porter. Porter's motion to dismiss this count will be denied.

Finally, a punitive damages claim is not an independent cause of action, but that certain torts entitle a plaintiff to punitive damages. *See Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985). Here, Plaintiffs' sole remaining claim rests upon the BCHA, which does not permit such damages. As a result, the claim for punitive damages will be dismissed. *See Russell v. Rhodes*, 2005 WL 736612, at *5 (Ky. App. 2005) (holding it proper to dismiss claims for punitive damages when all underlying tort claims are dismissed).

## CONCLUSION

For the reasons explained above, the Motion to Dismiss made by Porter Bancorp, Inc., (Docket No. 5), will be granted in part and denied in part. Counts I, II, and IV of the Complaint will be dismissed as to Porter Bancorp, Inc. A separate order will be entered this date in accordance with this opinion.